IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **EARL LAWRENCE NEW**, | Case No. 2:12-cv-1726-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **STEVEN SHELTON, M.D.**, in his individual capacity; **DAN DEWSNUP, M.D.**, in his individual capacity; **KATHLEEN J. ELLIOTT**, personal representative of the estate of Jodean Elliott-Blakeslee, M.D.; and **A. HUGHES, R.N.**, in her individual capacity, | |
| Defendants. | |

Franklin Jason Seibert, FJ SEIBERT, LLC — A LAW OFFICE, P.O. Box 4441, Salem, OR 97302. Of Attorneys for Plaintiff.

Ellen F. Rosenblum, Attorney General, Shannon M Vincent, Assistant Attorney General, OREGON DEPARTMENT OF JUSTICE, 1162 Court Street NE, Salem, OR 97301. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff Earl Lawrence New ("New") is an inmate in the custody of the Oregon

Department of Corrections ("ODOC") at the Snake River Correctional Institution ("SRCI").

Mr. New, who has been diagnosed with chronic hepatitis C and decompensated cirrhosis of the

PAGE 1 – OPINION AND ORDER

liver, alleges that his medical care at ODOC has been constitutionally deficient. Defendants now seek summary judgment in their favor on all of his claims. For the reasons below, Defendants' motion is GRANTED.

## BACKGROUND

Mr. New was admitted to the custody of ODOC in August 1994. Mr. New's claims of mistreatment stem primarily from his liver disease, for which he was diagnosed as early as 1998. Mr. New argues that he should be referred to Oregon Health Sciences University ("OHSU") for further evaluation for a possible liver-transplant procedure. In the alternative, Mr. New seeks certain medication to manage his liver disease. He also complains of abdominal pain that appears to be related to his liver condition, and he alleges that the doctors at SRCI have been constitutionally deficient in treating his pain.

In the latter half of 2012, Mr. New was seen several times by the medical staff at SRCI for his condition and his complaints of abdominal pain. On or around August 22, 2012, Dr. Jodean Elliott-Blakeslee examined Mr. New and approved his referral to OHSU for evaluation for a liver transplant. On October 23, 2012, after Mr. New was informed by OHSU that it had not received any such referral, Dr. Blakeslee contacted Nurse A. Hughes to inquire about the status of the referral paperwork. On October 31, 2012, Nurse Hughes informed Dr. Blakeslee that the referral paperwork had been sent to the wrong person at OHSU, but that there were copies in Mr. New's medical file that could be re-sent.

Later that same day, Dr. Steven Shelton, the medical director for ODOC health services, reviewed Mr. New's medical file. He then instructed Nurse Hughes *not* to resend the referral paperwork to OHSU, concluding that Mr. New's "MELD score"[1] of 11 was not sufficient to

---

[1] MELD, or Model for End-Stage Liver Disease, is an objective numerical scale ranging from 6 (less ill) to 40 (gravely ill) used to indicate the current severity of liver impairment. The

PAGE 2 – OPINION AND ORDER

qualify him for placement on the liver-transplant waiting list. Dr. Shelton's decision was based on a telephone conversation that he believed he had with Dr. Atif Zaman, medical director of the OHSU transplant program, in which Dr. Zaman informed him that OHSU was not accepting referrals from anyone with a MELD score under 15. Mr. New has provided a declaration from Dr. Willscott E. Naugler, medical director of transplant hepatology at OHSU, in which Dr. Naugler asserts that *he* was the one with whom Dr. Shelton spoke, and that during that conversation he gave Dr. Shelton information consistent with OHSU's written policies.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," the "mere existence of a scintilla of evidence in support of the [non-movant's] position [is] insufficient" to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for

---

number is calculated by a formula using three routine lab test results: (1) bilirubin, which measures how effectively the liver excretes blood breakdown products; (2) INR, which measures the liver's ability to synthesize chemicals used in the clotting mechanism of blood; and (3) creatinine, which measures kidney function. *Q&A for Transplant Candidates about Liver Allocation Policy*, United Network for Organ Sharing, http://www.ohsu.edu/xd/health/services/transplant/liver/pre-transplant/education-and-protocols/upload/liver-allocation.pdf (last visited Aug. 5, 2015).

PAGE 3 – OPINION AND ORDER

the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted).

## DISCUSSION

Defendants have moved for summary judgment on each of Mr. New's claims. Defendants argue: (1) that Mr. New is not an appropriate candidate for referral to OHSU for liver-transplant evaluation because of his MELD score; (2) that Mr. New is not a candidate for a Telaprevir prescription because of the increased risk of death in patients with his category of liver disease; and (3) that ODOC physicians have responded appropriately to Mr. New's complaints of pain. Defendants also argue that they are immune from civil damages under the doctrine of qualified immunity.

The Eighth Amendment protection against cruel and unusual punishment prohibits prison officials from being deliberately indifferent to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to state a claim for deliberate indifference, a plaintiff must demonstrate (1) a "serious medical need", and (2) that "defendant's response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quotation marks omitted). In order to demonstrate a "serious medical need," a plaintiff must show that the failure to treat the condition "could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* (quotation marks omitted). Indifference sufficient to satisfy the second element of a deliberate-indifference claim "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

It is well settled in the Ninth Circuit that a disagreement between an inmate and prison physicians over the necessity for or extent of medical treatment does not constitute deliberate

PAGE 4 – OPINION AND ORDER

indifference in violation of the Eighth Amendment. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004); *Shields v. Kunkle*, 442 F.2d 409, 410 (9th Cir. 1971). In order to constitute deliberate indifference, "[a] defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need." *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1994).

**A.  Refusal to Resend Referral Paperwork for Transplant Evaluation**

Mr. New's first claim alleges that Dr. Shelton, Dr. Blakeslee, and Nurse Hughes were deliberately indifferent to Mr. New's serious medical needs when they refused to resend his transplant-evaluation paperwork to OHSU. As noted above, Dr. Blakeslee initially approved Mr. New's referral and ordered Nurse Hughes to send it to OHSU for further consideration. Nurse Hughes admits that she inadvertently sent the paperwork to the wrong person. When she inquired as to whether she should resend the paperwork, Dr. Shelton told her not to do so. Because Nurse Hughes was not involved in any decisions regarding the treatment provided to Mr. New and because she had a duty to follow the instructions of Dr. Shelton, no reasonable jury could find that her actions amounted to deliberate indifference. Additionally, Mr. New has failed to demonstrate that Dr. Blakeslee, in any way, interfered with or denied the transplant referral. On the contrary, Dr. Blakeslee ordered the referral to OHSU both initially and then again when she discovered that the paperwork had not been received by the appropriate individual. Therefore, Nurse Hughes and Dr. Blakeslee are entitled to summary judgment on this claim.

Mr. New argues that Dr. Shelton's order to Nurse Hughes to not resend the transplant-referral paperwork to OHSU was a denial of medical treatment that constituted deliberate indifference to Mr. New's serious medical needs. Dr. Shelton responds that he provided care consistent with ODOC policy and the standard of care in the medical community, and that Mr. New is not an appropriate candidate for referral to OHSU. Dr. Shelton further argues that in any event, he is entitled to qualified immunity.

PAGE 5 – OPINION AND ORDER

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The doctrine protects officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The privilege is an *immunity from suit* rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001) (quotation marks omitted) (emphasis in original). For this reason, the Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

In *Saucier*, the Court outlined a two-step analysis required for determining the applicability of the qualified-immunity doctrine. 533 U.S. at 200. The first step is to determine "whether a constitutional right would have been violated on the facts alleged." *Id*. The second step is to determine "whether the right was clearly established." *Id*. In *Pearson*, the Court held that when it is "plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right," a court may start and end its analysis with the second prong. 555 U.S. at 237.

For a constitutional right to be clearly established, it must be defined in sufficiently specific terms "in regard to the kind of action [of which the plaintiff complains]." *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1100-01 (9th Cir. 1995). Mr. New's right against cruel and unusual punishment is clearly established; further, Mr. New's right against deliberate indifference by prison medical staff in determining and administering his treatment is

clearly established. That level of generality, however, is insufficiently specific for a qualified-immunity analysis. *See id*. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). That standard does not require binding precedent involving *identical* facts, but it must be apparent to a reasonable official, based upon pre-existing law, that his acts are unlawful. *Id*. "If the law did not put the [official] on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier*, 533 U.S. at 202.

Mr. New cites *McGuckin v. Smith* for the proposition that deliberate interference with care prescribed by a physician demonstrates the requisite culpability and requisite harm to present a § 1983 claim. *Cf.* 974 F.2d at 1059. While that proposition is correct, however, it states the issue too broadly: It would be impossible for a prison official, based on that proposition alone, to know precisely what conduct is unlawful.

There are relatively few cases that are binding in this jurisdiction that have the potential to put Dr. Shelton on notice as to the lawfulness of his actions. In *Jackson v. McIntosh*, the Ninth Circuit held that a decision to deny an inmate a kidney transplant based on personal animosity and not "honest medical judgment" would constitute deliberate indifference. 90 F.3d 330, 332 (9th Cir. 1996). Further, a rigid policy that denies treatment for inmates based solely on non-medical reasons and that does not take into account the inmate's complaints of pain and incapacity, also constitutes deliberate indifference. *Delker v. Maass*, 843 F. Supp. 1390, 1399 (D. Or. 1994). These cases, taken together, would put Dr. Shelton on notice that any decisions he made regarding Mr. New's treatment must be based upon medical judgment and on a fact specific, case-by-case basis.

PAGE 7 – OPINION AND ORDER

In *Rosado v. Alameida*, the Southern District of California held that "[a]ny reasonable official would understand that to deny or delay an inmate's and his treating physician's request that he be evaluated for placement on an eligible organ recipient list . . . would constitute deliberate indifference to a serious medical condition, and therefore violate the Eighth Amendment prohibition against cruel and unusual punishment." 497 F.Supp.2d 1179, 1194 (S.D. Cal. 2007). Regardless of whether that case creates clearly established law in another district,[2] its holding is based on several factual circumstances that are not present in this case.

First, the official in *Rosado* interfered with the inmate's referral based on an erroneous belief that inmates do not qualify for transplant procedures under any circumstances. *Id.* at 1190. Here, Dr. Shelton denied the referral based on his medical judgment. Dr. Shelton has consistently stated, and the documented evidence confirms, that his decision was based on Mr. New's MELD score.

Second, in *Rosado*, there was testimony from the defendant stating that he personally did not believe inmates should be given transplants. *Id.* In this case, there is no evidence from which a reasonable jury could conclude that Dr. Shelton believed that inmates should never be given organ transplants.

The last major distinguishing factor is that in *Rosado*, the inmate's condition did indeed qualify him for transplant referral, and there was no dispute in that regard. *Id.* at 1184, 1185. Here, by contrast, there is evidence that suggests that OHSU was not accepting referrals from anyone with a MELD score under 15. Mr. New has offered evidence that OHSU's actual policy includes exceptions to that rule, but whether Dr. Shelton's decision was *correct* is not the proper

---

[2] "[I]n the absence of binding precedent, we look to whatever decisional law is available to ascertain whether the law is clearly established for qualified immunity purposes, including decisions of state courts, other circuits, and district courts." *Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004) (citation and quotation marks omitted).

PAGE 8 – OPINION AND ORDER

inquiry. Dr. Shelton's decision was an "honest medical judgment." *Cf. Jackson*, 90 F.3d at 332. The appropriate question is whether, based on the holding in *Rosado* and all other relevant case law, it would have been clear to a reasonable official that Dr. Shelton's actions were unlawful. The case law does not establish that a physician cannot make a judgment, based on medical criteria, to rescind referral for transplant evaluation. For these reasons, Dr. Shelton is qualifiedly immune as to this claim and entitled to summary judgment.

**B. Refusal to Prescribe Telaprevir**

Mr. New's second claim alleges that Dr. Blakeslee, Dr. Dewsnup, and Dr. Shelton were deliberately indifferent to his serious medical needs when they refused to prescribe the prescription drug Telaprevir to treat Mr. New's Hepatitis C. Mr. New further alleges that there is a new drug, Harvoni, that is available to treat Hepatitis C but has not yet been prescribed for Mr. New. Defendants argue that Mr. New is not an appropriate candidate for the Telaprevir treatment, and that Harvoni was only recently approved by the FDA, and therefore, patients' responses to it are largely unknown.

Mr. New fails to establish that any of the Defendants purposefully ignored his medical needs. Dr. Dewsnup stated that Mr. New was evaluated for a Telaprevir prescription and that he was not a good candidate because of the increased risk of death to a patient with Mr. New's conditions. Because Mr. New's Telaprevir denial was based on reasonable medical judgment and because Mr. New has not offered any evidence to suggest that there was any other motivation for the decision, Mr. New cannot establish deliberate indifference on this claim. Further, any suggestion by Mr. New that Defendants were deliberately indifferent to his medical needs by failing to prescribe the new medication, Harvoni, fails for the same reasons. Defendants are therefore entitled to summary judgment on this claim.

PAGE 9 – OPINION AND ORDER

### C. Pain Management

Mr. New's last claim alleges that Dr. Blakeslee was deliberately indifferent to his serious medical needs when she denied pain medication to treat his abdominal pain. Dr. Blakeslee's representative argues that Mr. New's pain was managed properly and that many of his symptoms were a product of his failure to take his prescribed medication.

The deliberate-indifference framework is the same here as above. Mr. New must demonstrate a serious medical need and that Dr. Blakeslee's response to that need was deliberately indifferent. Here, Mr. New fails to establish that Dr. Blakeslee's response to Mr. New's allegations of pain were deliberately indifferent. Mr. New was examined in May 2012 by Dr. Blakeslee for complaints of abdominal pain. She concluded that Mr. New's pain was caused by bowel cramps that did not need pain medication. Mr. New again complained of pain on June 12, 2012 and was seen by Dr. Blakeslee on June 29, 2012. At that appointment, Mr. New reported that he was no longer experiencing pain. On August 8, 2012, Mr. New again complained of abdominal pain and was seen by Dr. Blakeslee on August 15, 2012. At that appointment, Dr. Blakeslee prescribed Vicodin for ten days to treat Mr. New's pain. Mr. New was next seen for abdominal pain about a month later, in September 2012, by Dr. Blakeslee. At that appointment, Dr. Blakeslee diagnosed irritable bowel syndrome and prescribed a trial of Paxil. Finally, Mr. New was seen in December 2012 by Dr. Gulick for complaints of abdominal pain. Dr. Gulick diagnosed Mr. New with possible colitis and ordered a gluten-free diet and referred Mr. New to the Therapeutic Level of Care committee to review for a fiber diet trial.

This record demonstrates a good-faith effort to diagnose and treat Mr. New's pain. Mr. New was examined at least six times in an eight-month period and prescribed multiple medications and dietary adjustments. No reasonable juror could conclude, based on this record,

that Defendants purposefully ignored or were deliberately indifferent to Mr. New's serious medical needs. Therefore, summary judgment on this claim is granted as to all Defendants.

## CONCLUSION

Defendants' motion for summary judgment (Dkt. 77) is GRANTED. This case is dismissed.

**IT IS SO ORDERED**.

DATED this 7th day of August, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

PAGE 11 – OPINION AND ORDER